FLORIDA FARM BUREAU FEDERATION, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1749-74.    Filed March 16, 1976.

*Ronald D. Fairchild,* for the petitioner.
*Gerald W. Hartley,* for the respondent.

· OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency of $10,550.02 in petitioner's Federal income tax for its fiscal year ended October 31, 1970. The only issue for decision is whether petitioner is entitled under sections 512[1] and 514 to deduct certain expenses allocable to the nontaxable portion of the rent received from the lease of rental property.

All the facts are stipulated.

At the time its petition was filed, petitioner was a Florida corporation whose principal place of business was Gainesville, Fla. At all relevant times, petitioner was exempt from income tax under section 501(c)(5), having received its exemption letter on March 25, 1946.

Petitioner is an agricultural organization whose primary function is to provide services to its members throughout the State of Florida. Petitioner's members are farmers and others involved in agricultural pursuits. Its services include providing business and economic advice designed to aid the farmer in his day-to-day operations and, in addition, other activities designed to promote improved farming methods throughout the State.

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted. The taxable period in controversy was prior to the effective date of the amendments to the pertinent sections made by the Tax Reform Act of 1969, 83 Stat. 487.

Apart from these exempt activities, petitioner realized "unrelated business taxable income"[2] from two sources. First, petitioner rendered services to the Southern Florida Farm Bureau Casualty Insurance Co. and received fees in the total amount of $173,090.06. The parties have agreed to the correctness of this figure as determined in the notice of deficiency.

Second, petitioner owned an office building, 90 percent of which was rented together with certain furniture and equipment to Southern Farm Bureau Casualty Insurance Co. Petitioner used the other 10 percent of the building for its headquarters where, among other things, it performed at least part of the income-producing services referred to in the immediately preceding paragraph. The expenses related to the use of the building for that purpose are not in dispute. Petitioner's total rental income from the building for the taxable year ended October 31, 1970, was as follows:

| | |
|---|---|
| Building and facilities rent from Southern Farm Bureau Casualty Insurance Co. | $59,355.00 |
| Furniture and equipment rent from Southern Farm Bureau Casualty Insurance Co. | 7,706.97 |
| Total | 67,061.97 |

The general rule, prescribed by section 512(b)(3),[3] is that, in computing unrelated business income, all rents from real property and personal property leased with the real property and all deductions directly connected with such rents are excluded. However, the building owned by petitioner was acquired through a debt-financed transaction, and section 512(b)(4) provides an

---

[2] Sec. 512(a) defines "unrelated business taxable income" as follows:

The term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the exceptions, additions, and limitations provided in subsection (b). * * *

[3] Secs. 512(b)(3), setting forth the general rule, and 512(b)(4), prescribing the exception, are as follows:

(b) EXCEPTIONS, ADDITIONS, AND LIMITATIONS.—The exceptions, additions, and limitations applicable in determining unrelated business taxable income are the following:
    * * *

(3) There shall be excluded all rents from real property (including personal property leased with the real property), and all deductions directly connected with such rents.

(4) Notwithstanding paragraph (3), in the case of a business lease (as defined in section 514) there shall be included, as an item of gross income derived from an unrelated trade or business, the amount ascertained under section 514(a)(1), and there shall be allowed, as a deduction, the amount ascertained under section 514(a)(2).

exception, in the case of rent derived from a "business lease," defined by section 514, of property so acquired. Only a portion of the net amount derived from such a lease is included in the computation of unrelated business taxable income.

Section 514(b)(1) defines the term "business lease" to mean a lease of real property for a term of more than 5 years by an exempt organization if at the close of the taxable year there is "business lease indebtedness" with respect to such property. Section 514(c)(1) defines "business lease indebtedness" to mean, in general terms, the unpaid amount of indebtedness incurred in acquiring and improving real property leased for a term of more than 5 years. The term "real property" is defined in section 514(d) to include personal property leased with the real estate.

The amount of the rent derived from a business lease includable in computing unrelated business income is prescribed by section 514(a).[4] Under that section, there is included as unrelated business income the same percentage of the total rents derived during the taxable year under such lease as (a) the business lease indebtedness at the close of the taxable year, with respect to the leased premises, is of (b) the adjusted basis, at the close of the taxable year, of such premises. The same formula applies in computing allowable deductions.

---

[4] SEC. 514. BUSINESS LEASES.

(a) BUSINESS LEASE RENTS AND DEDUCTIONS.—In computing under section 512 the unrelated business taxable income for any taxable year—

(1) PERCENTAGE OF RENTS TAKEN INTO ACCOUNT.—There shall be included with respect to each business lease, as an item of gross income derived from an unrelated trade or business, an amount which is the same percentage (but not in excess of 100 percent) of the total rents derived during the taxable year under such lease as (A) the business lease indebtedness, at the close of the taxable year, with respect to the premises covered by such lease is of (B) the adjusted basis, at the close of the taxable year, of such premises.

(2) PERCENTAGE OF DEDUCTIONS TAKEN INTO ACCOUNT.—There shall be allowed with respect to each business lease, as a deduction to be taken into account in computing unrelated business taxable income, an amount determined by applying the percentage derived under paragraph (1) to the sum determined under paragraph (3).

(3) DEDUCTIONS ALLOWABLE.—The sum referred to in paragraph (2) is the sum of the following deductions allowable under this chapter:

(A) Taxes and other expenses paid or accrued during the taxable year on or with respect to the real property subject to the business lease.

(B) Interest paid or accrued during the taxable year on the business lease indebtedness.

(C) A reasonable allowance for exhaustion, wear and tear (including a reasonable allowance for obsolescence) of the real property subject to such lease.

Where only a portion of the real property is subject to the business lease, there shall be taken into account under subparagraphs (A), (B), and (C) only those amounts which are properly allocable to the premises covered by such lease.

The parties have agreed that the correct ratio of acquisition indebtedness to the adjusted basis for the building, determined under the section 514 formula, was 76.04 percent for the taxable year ended October 31, 1970. This means that the difference between 76.04 percent ($50;993.92) of the total rental income ($67,061.97) minus the same percentage ($63,928.80) of the deductions allocable to the rented portion of the building ($84,072.59) reflects the tax result of petitioner's rental activity. Under this formula, the parties agree that petitioner realized a net business lease rental loss in the amount of $12,934.88 in the taxable year in controversy.

The formula applied in making these computations treats the other 23.96 percent of the rental ($16,068.05) as exempt income under section 501(c)(5). How the other 23.96 percent or $20,143.79 of the rental expenses should be treated in computing unrelated business taxable income is the issue to be decided. Petitioner contends that it is entitled to deduct this $20,143.79 in computing its tax on its unrelated business income from its income-producing service activities. Respondent argues to the contrary.

We think the statutes clearly deny any deduction for the $20,143.79. As pointed out above, the general rule is that rent is not unrelated business income, and section 512(b)(3), quoted in footnote 3 *supra,* in prescribing that rule expressly provides that in determining such income "all rents * * * and all deductions directly connected with such rents" are excluded. Further, in making the exception for business lease rents, section 512(b)(4), also quoted in footnote 3 *supra,* provides for only the deduction of the amount ascertained under section 514(a)(2). Section 514(a)(2), quoted in footnote 4 *supra,* limits allowable deductions to the percentage thereof derived from applying the acquisition indebtedness-adjusted basis formula discussed above. Taking into account the complexity of the problem to which sections 512, 513, and 514 are addressed, we think the statutory language denying any deduction for the expenses allocable to the nontaxable portion of the business lease income could hardly be clearer.

This conclusion is consistent with the legislative history of the business lease provisions of sections 512, 513, and 514. Those provisions were enacted to diminish the effectiveness of sale-leaseback transactions by exempt organizations. Because an

exempt organization could purchase property with borrowed funds and then satisfy the debt obligation with untaxed rental income from the property, Congress was concerned that the tax-exempt organization was unfairly using its tax-exempt status to accumulate valuable rental property. Specifically to combat the sale-leaseback problem, Congress enacted the business lease provisions, causing the rental income from debt-financed property to be included in the definition of unrelated business income on a ratio of the amount of indebtedness to the basis of the individual properties. See H. Rept. No. 2319, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 380, 410; S. Rept. No. 2375, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 483, 506.[5] There is nothing in those provisions or their history which reflects an intention to permit an exempt organization to offset expenses allocable to its exempt income against income which was sought to be taxed.

Petitioner's reliance on section 1.514(a)-2(c)(2), Income Tax Regs.,[6] is misplaced. In its simplest terms, that regulation provides that to the extent the allowable rental deductions permitted by section 514(a)(2) exceed the includable business lease rental income as determined under section 514(a)(1), that excess may be applied against other items of unrelated business taxable income. In petitioner's case, business lease expenses exceeded business lease income, resulting in a net loss of $12,934.88 from the business lease property. Respondent has allowed petitioner to utilize that loss against the other items of unrelated business taxable income, correctly following the provisions of the regulation. But the regulation, on its face, applies only to those expenses determined under section 514(a) to be deductible after the application of the acquisition indebtedness-adjusted basis ratio. The regulation has nothing to do with the treatment of rental income or expenses excluded by section 512(b)(3) and (4).

---

[5] For a more detailed analysis of the legislative history of the unrelated business income and business lease income provisions, see generally *University Hill Foundation,* 51 T.C. 548 (1969), revd. on other grounds 446 F.2d 701 (9th Cir. 1971), cert. denied 405 U.S. 965 (1972).

[6] Sec. 1.514(a)-2(c)(2), Income Tax Regs., provides as follows:

(2) *Excess deductions.* The deductions allowable under subparagraph (1) of this paragraph with respect to a business lease are not limited by the amount included in gross income with respect to the rent from such lease. Any excess of such deductions over such gross income shall be applied against other items of gross income in computing unrelated business taxable income taxable under section 511(a).

As an alternative ground for his position, respondent has cited section 265(1)[7] for the proposition that expenses attributable to nontaxable rental income are not deductible. Because we have sustained respondent on other grounds, we expressly reserve any discussion on the applicability of section 265 to the unrelated business taxable income provisions of the Code.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[7] SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME.
No deduction shall be allowed for—
(1) EXPENSES.—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle.